UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| JERILYNNE JONES,<br><br>    Plaintiff,<br><br>v.<br><br>WAYPOINT RESOURCE GROUP, LLC,<br><br>    Defendant. | Case No. 19-cv-12851<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [18] AND IMPOSING SANCTIONS ON PLAINTIFF**

Jerilynne Jones reviewed her credit report and noticed a debt she thought was inaccurate. She says she sent a letter to Waypoint Resource Group, LLC, the company that had reported the debt, disputing the debt's accuracy. But, according to Jones, Waypoint continued to report the debt to credit reporting agencies without indicating that it was disputed. This, in Jones' view, violated the federal Fair Debt Collection Practices Act and two state laws. So Jones filed this lawsuit.

Here is what occurred in greater detail. Part of Waypoint's business is to collect debts not owed to it and to furnish information about debts to credit reporting agencies like Equifax. (ECF No. 18-10, PageID.149.) One of the companies that Waypoint does business with is Charter Communications, an internet and cable provider. (ECF No. 18-10, PageID.150.) Apparently, Jones had accounts with Charter, and in 2018, Charter placed two accounts that were in Jones' name in the hands of Waypoint. (*Id.*) One account had a balance of about $759. (*Id.*) In November 2018, Waypoint began reporting that $759 debt to credit reporting agencies. (*Id.*) This continued on a weekly basis. (*Id.*)

In March 2019, Jones obtained her credit report and noticed that it showed the $759 debt owed to Charter. (ECF No. 1, PageID.3) According to Jones, on June 26, 2019, a letter was sent to Waypoint disputing the debt. (ECF No. 1, PageID.3) (Who, precisely, sent the letter will be discussed in some detail below.) But when Jones obtained her credit report again in September 2019, the debt was not flagged as disputed. (ECF No. 1, PageID.3)

Less than three weeks later, Jones filed this lawsuit (and two other similar, federal lawsuits). She alleges that Waypoint violated the law in three ways. (ECF No. 1.) Two are no longer relevant, as Jones has "abandon[ed]" her two state-law claims. (ECF No. 23, PageID.513.) The remaining claim is pursuant to the Fair Debt Collection Practices Act. (ECF No. 1, PageID.3–4.) As relevant here, the FDCPA prohibits a debt collector from "[c]ommunicating . . . to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). According to Jones, Waypoint violated § 1692e(8): she disputed the Charter debt in June 2019, but when Waypoint continued to report the debt to credit reporting agencies, Waypoint did not indicate that it was disputed. (ECF No. 1, PageID.3–4.)

Waypoint says that no reasonable jury could find for Jones on her FDCPA claim and so this Court should end the case via summary judgment. *See* Fed. R. Civ. P. 56(a). Waypoint argues it never received the June 2019 letter disputing the debt. (*See* ECF No. 18, PageID.91, 95–96.) In support of this argument, Waypoint submits an affidavit from Danen Shiek that states, "Waypoint's business practice is to update its account management system to reflect any substantive communication . . . . Waypoint's account history does not show that it received a letter from [Jones] . . . . Based on Waypoint's investigation, it did not receive the June 26, 2019 letter that [Jones] alleges she sent." (ECF No. 18-10, PageID.153.) Waypoint has also produced a

printout of the account history associated with the $759 debt, and, while the printout is cryptic, there appears to be no entry for a June 2019 letter. (ECF No. 18-9, PageID.146.) So Waypoint argues that when it continued to send information about the $759 debt to credit reporting agencies without indicating that the debt was disputed, it did not know that Jones had disputed the debt. (ECF No. 18, PageID.95–96.) And Waypoint claims that if it did not know that Jones had disputed the debt, then no reasonable jury could find that it violated § 1692e(8) by communicating credit information that it knew or should have known was false. (*See id.*)

In response to Waypoint's motion for summary judgment, Jones has produced evidence that the dispute letter was mailed to Waypoint. In particular, Jones has supplied the Court with an affidavit from Heather Hartmann, an "employe[e]" for the law firm that represented Jones in June 2019. (ECF No. 23-2, PageID.516.) Hartmann avers, "On June 26, 2019, on [Jones'] behalf, I signed and mailed a letter to [Waypoint] that disputed [Waypoint's] account with [Jones]. The address to which I mailed the letter is the address that appears on [Waypoint's] website." (ECF No. 23-2, PageID.516.) Also part of the record is a copy of the June 2019 letter and a copy of the envelope that was allegedly used to mail that letter. (ECF No. 18-3, PageID.112–113.) Printed on the addressee portion of the envelope is "Waypoint Resource Group[,] P.O. Box 8588, Round Rock, TX 78683." (ECF No. 18-3, PageID.113.) Jones was not deposed and the attachment of Hartman's affidavit to the response brief was the first Waypoint says it learned of her existence.

Given Jones' and Waypoint's competing evidence, the Court cannot grant summary judgment in favor of Waypoint. Waypoint does not claim that the P.O. Box on the envelope and referenced in Hartmann's affidavit is not its correct address (and, based on Waypoint's website, it does appear to be Waypoint's "Payment Address"). And Hartman states that she "mailed the [dispute] letter" to the P.O. Box "[o]n June 26, 2019." (ECF No. 23, PageID.516.) A jury could

3

reasonably infer that when Hartmann says that she "mailed" the letter, she means that she did so properly (with the necessary postage, etc.). *See Bard v. Brown Cty., Ohio*, 970 F.3d 738, 748 (6th Cir. 2020) ("In deciding a motion for summary judgment, this court views the factual evidence and draws all reasonable inferences in favor of the non-moving party."). And a jury could reasonably infer that the postal service did its job—delivered the envelope to the addressee. *See id.* Thus, a jury would be faced with these competing inferences and evidence: on the one hand, Hartmann mailed the dispute letter, the letter had Waypoint's address, and the post office usually delivers mail to the addressee; on the other hand, Shiek says Waypoint's system shows no dispute letter. If the jury found Hartmann and post-office operations more convincing than Shiek and Waypoint's account history, it could reasonably find for Jones; if the jury found Shiek and the account history more convincing, it could reasonably find for Waypoint. In other words, this case presents a classic credibility dispute precluding summary judgment. *See Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013) ("Courts may not resolve credibility disputes on summary judgment." (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Waypoint resists this straightforward application of the summary-judgment standard in three ways.

For one, Waypoint argues that in her complaint, Jones said that she, personally, mailed the dispute letter. And, according to Waypoint, the law says that "admissions in the pleadings are generally binding on the parties and the Court." (ECF No. 24, PageID.517 (quoting *Brown v. Tennessee Gas Pipeline Co.*, 623 F.2d 450, 454 (6th Cir. 1980)).) Thus, says Waypoint, Jones cannot "create a genuine issue of material fact by contradicting her own admission." (ECF No. 24, PageID.527.)

4

But Jones has not really contradicted her own admission. The allegation of the complaint that Waypoint relies on says, "On or about June 26, 2019, *Plaintiff* submitted a letter to Defendant disputing the Alleged Debt." (ECF No. 1, PageID.2 (emphasis added); ECF No. 24, PageID.527.) "Plaintiff" does not necessarily mean Jones herself sent the letter as opposed to a representative sent it on her behalf. In litigation, a client and lawyer are often treated as one. *See Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) (noting that in "our system of representative litigation" "each party is deemed bound by the acts of his lawyer-agent"). For instance, although Jones' lawyer (or someone at the law firm she retained) actually docketed the complaint in this case, it would be completely accurate to say that "Plaintiff filed this lawsuit." And even if Waypoint is correct that "Plaintiff" in Jones' complaint means Jones herself, the fact that Hartmann sent the letter on behalf of Jones is more of an inaccuracy than a contradiction. It would have been more accurate to have alleged "Plaintiff's counsel" submitted the letter (and even more accurate to say "an employee at the firm Plaintiff retained" submitted the letter), but the key point of the allegation is that a dispute letter from Plaintiff was sent on June 26, 2019. And Jones has not taken a contrary position to that point at the summary judgment stage.

Waypoint also argues that because Jones cannot establish, or Waypoint has rebutted, the common-law mailbox presumption, it is entitled to summary judgment. (*See* ECF No. 24, PageID.527–530.) This presumption is rooted in common sense: if a party properly addresses and properly deposits a letter for mailing, "it is presumed, from the known course of business in the post-office department, that it reached its destination at the regular time, and was received by the person to whom it was addressed." *Rosenthal v. Walker*, 111 U.S. 185, 193 (1884). This presumption of receipt "arises upon proof that the item was properly addressed, had sufficient postage, and was deposited in the mail." *In re Yoder Co.*, 758 F.2d 1114, 1118 (6th Cir. 1985).

Waypoint argues that the copy of the envelope Jones has produced "reflects no evidence that postage was applied or that the letter was mailed, and [Hartmann's] Declaration does not cure those deficiencies." (ECF No. 24, PageID.530.) And, argues Waypoint, even if the presumption did arise, it has been rebutted through Sheik's testimony that Waypoint never received the letter. (*Id.*)

Waypoint might be right that Jones is not entitled to a presumption of receipt. Hartmann's affidavit does not say that she affixed the correct postage. And the photocopied envelope includes no stamp. So perhaps, Jones did not produce evidence showing that the dispute letter "had sufficient postage," *In re Yoder Co.*, 758 F.2d at 1118, and no presumption arose. And even if one did, "[t]estimony of non-receipt, standing alone, . . . [is] sufficient to rebut the presumption of receipt." *Id.* So Shiek's testimony arguably rebutted any presumption.

But the absence of a presumption does not mean Waypoint is entitled to summary judgment. The presumption of receipt does not displace Rule 56 or the usual summary-judgment framework. Presumption or no presumption, to win summary judgment Waypoint must still show that it "is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a), which is to say that no reasonable jury could find it received the letter. Yet, as explained, Hartmann's affidavit (along with copies of the letter and envelope) would permit a reasonable jury to find that Waypoint received the letter.

That the presumption of receipt does not alter the usual summary-judgment framework is well supported by the case law. The Supreme Court has explained that the presumption of receipt arising from a proper mailing is "a mere inference of fact" and "when it is opposed by evidence that the letters never were received, must be weighed with all the other circumstances of the case, by the jury in determining the question whether the letters were actually received or not."

6

*Rosenthal v. Walker*, 111 U.S. 185, 193–94 (1884); *accord Rios v. Nicholson*, 490 F.3d 928, 930–31 (Fed. Cir. 2007). In other words, when the presumption is rebutted, a fact question remains to be addressed in the usual manner. Indeed, the common-law mailbox rule comfortably fits into the usual burden-of-production framework. Proper mailing shifts the burden of production to the party claiming non-receipt. *Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 320 (3d Cir. 2014). And sworn testimony that the letter was not received suffices to carry that burden of production. *Id.* At which point, the presumption is "destroy[ed]," "leaving only that evidence and its inferences to be judged against the competing evidence and its inferences to determine the ultimate question at issue." *Id.* (internal quotation marks omitted).

All of this is consistent with published, Sixth Circuit precedent. In *In re Yoder Co.*, the Court explained that proper mailing gives rise to a presumption of receipt but that the presumption can be rebutted by "[t]estimony of non-receipt." 758 F.2d 1114, 1118 (6th Cir. 1985). The question then became what remained of the presumption after it was rebutted. *Id.* Like the Third Circuit in *Lupyan*, the Sixth Circuit looked to Federal Rule of Evidence 301 and its burden-shifting framework for presumptions. *Id.* at 1118–20. Reasoning that Rule 301 implemented the so-called "bursting bubble" approach to rebutted presumptions, the Court found that once the presumption of receipt was rebutted, it had "no probative effect." *Id.* at 1120.

The Court acknowledges that Waypoint cites two cases—*Laird v. Norton Healthcare, Inc.* and *Garrison v. Equifax Information Services, LLC*—indicating that when a plaintiff fails to establish she is entitled to presumption of receipt under the mailbox rule, the defendant is entitled to summary judgment. But in *Garrison*, the affidavit of mailing was vague, and so summary-judgment was arguably warranted regardless of the presumption. *See* No. 10-13990, 2012 WL 1278044, at *5 (E.D. Mich. Apr. 16, 2012). And in *Laird*, one key issue is *when* the letter was

7

mailed, and the plaintiff's affidavit did not say when. *See* 442 F. App'x 194, 199 (6th Cir. 2011). And even if *Laird* and *Garrison* are not distinguishable and stand for the proposition that a plaintiff's failure to establish the presumption of receipt entitles a defendant to summary judgment, they are merely persuasive precedent. And this Court finds *Rosenthal*, *Rios*, *Lupyan*, and *In re Yoder* to be more persuasive.

Changing gears entirely, Waypoint also argues that this Court should not consider Hartmann's affidavit. According to Waypoint, throughout her initial disclosures, witness list, and responses to interrogatories, Jones never once mentioned Hartmann as someone with information relating to this suit. (ECF No. 24, PageID.526.) Waypoint argues that because Jones failed to disclose Hartmann in discovery, Federal Rule of Civil Procedure 37 requires exclusion of Hartmann's testimony from the case. (*See id.*)

Part of Waypoint's Rule 37 argument is that Jones should have disclosed Hartmann when answering interrogatories; but the Court has reviewed the interrogatories and they are not as clear as Waypoint suggests. The primary interrogatory that Waypoint relies on merely states, "Describe in detail any and all communications . . . between you, or your attorneys or agents, and Waypoint relating to any credit reporting on Plaintiff's consumer reports. With respect to each identified communication, please provide . . . *the identity of the representative involved in the communication, the identity of any witnesses to the communication* . . . ." (ECF No. 18-4, PageID.117 (emphasis added); ECF No. 24, PageID.526.) One interpretation of this interrogatory is that the "representative" refers to a Waypoint representative—not the law firm Jones retained. Additionally, it is not clear that Hartmann "witnesse[d]" Jones type the letter—she merely says she "signed and mailed" Jones' letter. (ECF No. 23-2, PageID.516.) In other words, the way that

8

the interrogatory was worded arguably led Jones to believe that the Waypoint was not asking about who mailed the letter.

That said, Waypoint's more general point about Jones' failure to disclose Hartman is a good one. In answering the complaint, Waypoint asserted an affirmative defense based on its lack of knowledge and strongly hinted that it did not receive the dispute letter. (*See* ECF No. 4, PageID.19–20.) So Jones had some notice about Waypoint's defense in this case. And under Rule 26(a), a party is to disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." To prove her FDCPA claim, Jones would have to establish that she disputed the debt, i.e., that she sent the June 2019 letter. So Rule 26(a) coupled with the notice provided by Waypoint's answer, should have led Jones's attorneys to disclose Hartmann during discovery.

But what is the appropriate sanction for this discovery abuse? Waypoint is correct that one available sanction under Rule 37 is exclusion of Hartmann's affidavit. (ECF No. 24, PageID.526.) But there are others. More completely, Rule 37 says, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to *or instead of this sanction*, the court, on motion and after giving an opportunity to be heard . . . may impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1) (emphasis added). So Rule 37 grants the Court discretion to craft a sanction instead of excluding the evidence.

In exercising that discretion, the severity of the sanction is a relevant consideration. If the Court were to exclude Hartmann's affidavit, Waypoint would likely be entitled to summary judgment. So exclusion effectively ends Jones' case. That is extreme. And particularly so given

9

that Waypoint did not do all it could to discover Hartmann. During discovery, Jones produced the June 2019 letter. So Waypoint could have inferred that Jones would make some type of argument that the letter was sent. (Indeed, without establishing that it was sent, Jones' claim under § 1692e(8) falls apart.) Yet, despite the likelihood that Jones would claim the letter was sent, Waypoint never deposed Jones. Had Waypoint done so, it probably would have learned that Jones, personally, did not mail the letter. The natural follow-up question would have led to discovery of Hartmann.

Additionally, the Court can craft a different sanction that directly speaks to the prejudice Jones and her counsel have caused Waypoint. The problem here is that Waypoint drafted part of its motion for summary judgment assuming that there was no genuine dispute over whether it received the letter. Only after receiving Jones' response brief did Waypoint learn that Jones had evidence that could create a genuine dispute. So Waypoint arguably paid its lawyers to write a portion of an opening brief that did not need to be written. That prejudice can be directly cured by making Jones' counsel reimburse Waypoint for what it had to pay its attorneys to do unnecessary work. The only other prejudice the Court can perceive is that Waypoint did not get to depose Hartmann and ask her, for instance, if she applied proper postage to the envelope. But the Court can cure that prejudice directly too: the Court can reopen discovery to allow Waypoint to depose Hartmann. In short, the Court will not exclude the Hartmann affidavit but will impose the sanctions set out below.

\* \* \*

For the reasons given, Waypoint's motion for summary judgment (ECF No. 18) is GRANTED IN PART and DENIED IN PART. Counts II and III of this case are DISMISSED. Count I, Jones' FDCPA claim, remains.

Regarding the sanction, Waypoint is to docket proof of the hours its attorneys spent in preparing the portion of the opening summary-judgment brief that corresponds to the FDCPA claim. Jones will then have two weeks to object to the hours. The Court will then review the billings and the objections (if any) and determine Waypoint's reasonable attorney's fees that are to be paid by Jones' counsel. Instead of paying that sanction, Jones can agree to have this Court reconsider Waypoint's already-filed motion for summary judgment and already-filed response brief without Hartmann's affidavit.

Further, the Court reopens discovery for the sole purpose of allowing Waypoint to depose Hartmann. The deposition must be taken on or before June 18, 2021. If Waypoint believes it has grounds to seek summary judgment on the remaining FDCPA claim after it deposes Hartmann, Waypoint may file a motion for summary judgment within 30 days of her deposition. The motion may not make arguments for summary judgment that could have been made in the motion decided today. If no motion is filed, the Court will convene a status conference to discuss scheduling of the trial.

SO ORDERED.

Dated: March 15, 2021

                                              s/Laurie J. Michelson  
                                              LAURIE J. MICHELSON  
                                              UNITED STATES DISTRICT JUDGE